CRAWFORD, Judge
(dissenting):
I respectfully dissent from the majority’s holding that despite the Department of Defense (DoD) log-on banner and Appellee’s consent to monitoring, she had both the subjective and objective expectation of privacy in e-mails seeking advice from her friends regarding concealing her drug use. This case impacts on the DoD policy as set forth in the banner. “DoD computer systems may be monitored for all lawful purposes.... Use of this DoD computer system, authorized or unauthorized, constitutes consent to monitoring of this system.” This banner, which appears on nearly all DoD systems, constitutes consent to monitoring. See Scott A. Sundstrom, You’ve Got Mail! (And the Government Knows It): Applying the Fourth Amendment to Workplace E-mail Monitoring, 73 N.Y.U. L.Rev. 2064, 2090 (1998) (citing Scot L. Gulick, Memorandum from Office of General Counsel to All Computer Users, The Standards of Ethical Conduct (United States Department of Defense), Sept. 1997, at 1). Our analysis should determine whether there is coverage and protection under the Fourth Amendment.* See, e.g., Taylor, 41 M.J. at 170. The question hinges on whether Appellee had a subjective and objectively reasonable expectation of privacy. Katz v. United States, 389 U.S. 347, 361, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring). If there is, what protection does Appellee deserve?
In United States v. Monroe, 52 M.J. 326, 330 (C.A.A.F.2000), we held that a defendant does not have an expectation of privacy in his e-mail, “at least from the personnel charged with maintaining the EMH [electronic mail host] system.” We left open the issue presented in this particular ease. Here the Government banner removes any subjective or objective expectation of privacy by requiring all employees to consent to monitoring before they may use their computers. See Wyman v. James, 400 U.S. 309, 318-24, 91 S.Ct. 381, 27 L.Ed.2d 408 (1971)(notice to welfare benefits recipient was factor in determining no violation of the Fourth Amendment).
The majority mistakenly believes that an objective reasonable expectation of privacy can be preserved for some forms of seizure despite being nonexistent for others. The majority cites no legal authority to support this position. Once Appellee was given notice of and consented to monitoring of any kind, she could not maintain a reasonable expectation of privacy against other forms of intrusion. As the Supreme Court writes, “Once frustration of the original expectation of privacy occurs, the Fourth Amendment does not prohibit governmental use of the ... information....’” Georgia v. Randolph, 547 U.S. 103, 126 S.Ct. 1515, 1534, 164 L.Ed.2d 208 (2006) (quoting United States v. Jacobsen, 466 U.S. 109, 117, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984)). Knowledge of actual monitoring negates any reasonable expectation of privacy. See United States v. Hatcher, 323 F.3d 666, 674 (8th Cir.2003) (holding prisoners and their attorneys had no reasonable expectation of privacy since they knew their conversations were being recorded); United States v. Madoch, 149 F.3d 596, 602 (7th Cir.1998) (no spousal privilege when communicating to an inmate, knowing that inmate communications are monitored). Appellant in the present case was aware of and *68 consented to the monitoring and archiving of electronic communications originating from her government computer. She therefore could not have a reasonable expectation of privacy in those communications. That the communications were obtained specifically for law enforcement purposes has no bearing on her expectation of privacy.
The majority cuts too fine a line in trying to distinguish applicable federal precedent based on the wording of the banner. The majority states that United States v. Angevine, 281 F.3d 1130, 1133 (10th Cir.2002), is not applicable because in that case, the banner included the explicit term, “contain no right of privacy or confidentiality.” While a rewording of subsequent DoD Internet usage banners may be advisable, the language of the banner at issue here leaves no doubt as to its invasiveness: “All information, including personal information, placed on or sent over this system may be monitored.” The majority seems to think that the average servicemember would not understand the plain meaning of that sentence without the magical phrase “no expectation of privacy.” This conclusion is disconcerting. The majority ignores a number of other cases with less specific banner language where the courts found no reasonable expectation of privacy. See Kaufman v. SunGard Inv. System, No. 05-CV-1236(JLL), 2006 U.S. Dist. LEXIS 28149, at *12, 2006 WL 1307882, at *4 (D.N.J. May 10, 2006)(letter-opinion and order); Muick v. Glenayre Elec., 280 F.3d 741, 743 (7th Cir.2002); United States v. Simons, 206 F.3d 392, 398 (4th Cir.2000). The purpose of the banner was to give notice that computer activity would be monitored, and as imprecise as it may be, the language of the banner unambiguously conveyed that message.
The majority also attempts to distinguish Simons based on the “very specific policy regarding use of the computer system” in that case. This is a distinction that should not be made. As stated above, a reasonable expectation of privacy is not divisible. The majority refuses to directly acknowledge applicable federal precedent on this issue. In doing so, they ignore a clear trend in the federal courts that there is no expectation of privacy in situations, like this one, where there is a DoD banner clearly announcing a departmental monitoring policy. When an employee knows that an employer is monitoring his or her e-mail, there cannot be a reasonable expectation of privacy, especially when the employee is notified each time that logging on constitutes consent to monitoring.
The court noted in Simons, 206 F.3d at 398, that “office practices, procedures, or regulations may reduce legitimate privacy expectations.” Likewise, in Angevine, 281 F.3d at 1134, the court held that a university professor had no expectation of privacy to files erased on his computer because the university’s “policy explicitly cautions computer users that information flowing through the University network is not confidential either in transit or storage on a University computer.” Thus, university users were aware that administrators and others had free access to the downloaded Internet material. The court held that deleting the files “was not sufficient to establish a reasonable expectation of privacy.” Id. at 1135. “[G]iv-en the absence of the city policy placing [defendant] Slanina on notice that his computer use would be monitored and the lack of any indication that other employees had routine access to his computer, we hold that Slanina’s expectation of privacy was reasonable.” United States v. Slanina, 283 F.3d 670, 677 (5th Cir.2002), vacated on other grounds by 537 U.S. 802, 123 S.Ct. 69, 154 L.Ed.2d 3 (2002).
In United States v. Bailey, 272 F.Supp.2d 822, 835-36 (D.Neb.2003), the court held that a defendant had no reasonable expectation in his computer at his civilian work site which had a log-on banner. The log-on banner stated:
These computer resources are solely owned by the Company. Unauthorized access or use is a violation of federal law and could result in criminal prosecution. Users agree not to disclose any company information except as authorized by the company. Your use of this computer system is consent to be monitored and authorization to search your personal computer *69 to assure compliance with company policies.
Id. at 831. The company’s policy available to the workers said:
It is critical that all agents, employees, suppliers and vendors understand these information security policies and comply with them when accessing and using American Family’s electronic resources. All of us — as individuals and as a Company — will be held accountable for knowing and adhering to these policies. Each of us as individuals and as a Company can be held liable for failing to comply with these policies.
Id. at 832.
Additionally, the company policy posted on the Intranet site explained that while personal use of computers was not prohibited, it could not be used for unlawful purposes, and the workers had “no expectation of privacy associated with the information they store in or send through these systems.” Id. at 832, 836. As to the expectation of privacy, the court stated:
Absent a legitimate and constitutionally protected expectation of privacy in e-mail files, defendant cannot successfully assert a Fourth Amendment violation. United States v. Bach, 310 F.3d 1063, 1066 (8th Cir.2002). Factors relevant to determining if a legitimate expectation of privacy exists include ownership, possession and/or control of the area searched or item seized; the defendant’s historical use of the property or item; whether the defendant can exclude others from that , place; whether he took precautions to maintain the privacy; and whether the defendant had a key to the premises.
Id. at 834-35.
The fact that an individual has a password does not change the expectation of privacy. Garrity v. John Hancock Mut. Life Ins. Co., No. 00-12143-RWZ, 2002 U.S. Dist. LEXIS 8343, at *5-*6, 2002 WL 974676, at *2 (D.Mass. May 7, 2002); see also Bailey, 272 F.Supp.2d at 835-37 (the facts, including “employer’s notice [that] ... internet use[ ] and e-mail may be monitored,” undermine[ ] an employee’s claim that the information was private and “any expectation of privacy that the employee has is not one that society is willing to accept and protect”). In Smyth v. Pillsbury Co., 914 F.Supp. 97, 101 (E.D.Pa.1996), the court indicated that an employee has no reasonable expectation of privacy in email because “the company’s interest in preventing inappropriate and unprofessional comments or even illegal activity over its email system outweighs any privacy interest the employee may have in those comments.”
The majority improperly uses Appellee’s authorization for personal use of her e-mail account to support their finding of a reasonable expectation of privacy. However, her personal account was her work account and Appellee’s communications fall within the scope of work-related communications. Appellee discussed her diminished ability to perform her job as well as her appearance at work in e-mails sent to Ms. KS between 9:46 a.m. and 1:07 p.m. on August 15, 2000, the day of her urinalysis test. The times the emails were sent indicate that they were sent while she was at work. The systems administrator testified that the e-mail accounts were “authorized specifically for doing your job within DOD” and that personal use is something they have been “lenient on allowing.” The distinction between a work-related e-mail and e-mail unrelated to work would be difficult, if not impossible, to make in many instances.
The perception of one administrator in a department as large as the DoD, with over 2.5 million servicemembers, excluding civilians, is not binding on the department itself. The belief of an administrator is even more attenuated considering how computers are used on the job. Cf. United States v. Muniz, 23 M.J. 201, 206 (C.M.A.1987) (“[W]e note that the eredenza, like any other item of Government property within the command, was subject at a moment’s notice to a thorough inspection. That omnipresent fact of military life, coupled with indisputable government ownership and the ordinarily non-personal nature of military offices, could have left appellant with only the most minimal expectation — or hope — of privacy.” (citation omitted)).
*70 As the United States Court of Appeals for the Ninth Circuit stated in United States v. Ziegler, 456 F.3d 1138, 1146 (9th Cir.2006), “Employer monitoring is largely an assumed practice, and thus we think a disseminated computer-use policy is entirely sufficient to defeat any expectation that an employee might nonetheless harbor.” Every time Appellee turned on her computer, she was aware of the computer-use policy of her service and could not have a reasonable expectation of privacy.
While the Supreme Court has not heard an e-mail case, the Supreme Court’s expectation of privacy approach applies. Certainly, the possibility of exposure to the public eye diminishes or alleviates one’s expectation of privacy, and undoubtedly when one is so warned of monitoring, there is no expectation of privacy. Just as the Supreme Court indicated, there is no reasonable expectation of privacy in numbers dialed on a telephone because “[w]hen he used his phone, petitioner voluntarily conveyed numerical information to the telephone company and ‘exposed’ that information to its equipment in the ordinary course of business.” Smith v. Maryland, 442 U.S. 735, 744, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979), superseded by statute, Electronic Communications Privacy Act of 1986, 18 U.S.C. § 3121(a) (2000). Similarly, as to business records, the Supreme Court indicated that financial statements and deposit slips are “voluntarily conveyed to the banks and exposed to their employees.” United States v. Miller, 425 U.S. 435, 442, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976), superseded by statute, Right to Financial Privacy Act of 1978, 12 U.S.C. § 3401 (2000), as recognized in SEC v. Jerry T. O’Brien Inc., 467 U.S. 735, 745, 104 S.Ct. 2720, 81 L.Ed.2d 615 (1984). Based on the hierarchy as to sources of rights, a statute can grant more rights than the Fourth Amendment. See United States v. Lopez, 35 M.J. 35, 39 (C.M.A.1992). Thus, there is no expectation of privacy. Miller, 425 U.S. at 443-44, 96 S.Ct. 1619.
One “takes the risk, in revealing his affairs to another, that the information will be conveyed by that person to the Government,” id. at 443, 96 S.Ct. 1619, thus providing a basis for the conclusion that the subscriber lacks an expectation of privacy in communications held by a service provider, especially when there is a log-on notice and no statutory protection.
Even when there is a reasonable expectation of privacy, one of the exceptions is consent to search. Consent is such that one would not rely upon an assumption of risk that the service provider would not reveal this information to law enforcement officials. Hoffa v. United States, 385 U.S. 293, 302-03, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966). Likewise, in Lopez v. United States, 373 U.S. 427, 465, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963), the Supreme Court acknowledged that a conversation surreptitiously recorded by a government agent was admissible even though there was no prior judicial authorization for the recording. See also Osborn v. United States, 385 U.S. 323, 327-31, 87 S.Ct. 429, 17 L.Ed.2d 394 (1966) (holding that a tape-recorded conversation based on surreptitious surveillance was properly admitted). Certainly, a communicator’s expectation of privacy is not reasonable once he or she has given consent to search. Expectation of privacy is also lessened when the user recognizes that his or her communications are recorded. Where consent is given to an administrator or someone with mutual use of the property, see United States v. Matlock, 415 U.S. 164, 171, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974), the originators of e-mail assume the risk that the administrator may give consent to law enforcement officials. This is not an instance where the police went to the Internet provider as in United States v. Maxwell, 45 M.J. 406, 412 (C.A.A.F.1996). The possession of the password means that this information is protected against other individuals logging onto Appellee’s computer or to another computer and trying to obtain her e-mails. The password is not a protection against the systems administrator or law enforcement. For the aforementioned reasons, I respectfully dissent.

 Since 1960, this Court has held that the Bill of Rights applies to servicemembers "except those [rights] which are expressly or by necessary implication inapplicable.” United States v. Jacoby, 11 C.M.A. 428, 430-31, 29 C.M.R. 244, 246-47 (1960); cf. Davis v. United States, 512 U.S. 452, 457 n. *, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994) (Supreme Court has "never had occasion to consider whether Fifth Amendment privilege ... applies of its own force to the military____”); United States v. Taylor, 41 M.J. 168, 171 (C.M.A.1994) (application of Bill of Rights "is not only of academic importance, but also it is important to the President in deciding what rules should be applied to the military”).